# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL ACTION NO. 3:19-CR-225-S |
| ROBERT MCGRAW (2) | § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Robert McGraw's Motion to Transfer Venue [ECF No. 32]. For the following reasons, the Court grants the Motion and transfers the above-captioned action to the Southern District of New York.

### I. BACKGROUND

In this criminal action, the Government charges Defendants Robert McGraw ("McGraw") and Andrew Scherr ("Scherr") with operating a scheme to defraud various insurance companies from the New York offices of Southport Lane Management, LLC, Southport Lane, LP, and several of its affiliated companies (collectively, "Southport"). *See* Indictment ¶¶ 5, 18. According to the Indictment, McGraw served as Southport's Executive Director from 2012 to 2016, and Scherr served as Southport's Chief Financial Officer from 2011 to 2016. *Id.* ¶¶ 6-7. The Government claims that McGraw and Scherr, along with co-conspirators who are not defendants in this case, conspired to use Southport to:

> (i) [C]reate fraudulently overvalued and illiquid securities, and false and fraudulent documentation regarding the purported value of those securities; (ii) gain access to the investment portfolios, trusts, and assets of the [affected insurance companies]; and (iii) strip the [affected insurance companies] of cash and other valuable assets by replacing those assets with fraudulently overvalued and illiquid securities created by [McGraw and Scherr] . . . and their co-conspirators.

*Id.* ¶ 19; *see also id.* ¶¶ 20-54 (discussing the specific details of the alleged scheme). The Government contends that because of the alleged scheme, numerous insurance companies

"suffered substantial losses," and one insurance company, based in Dallas, Texas, was placed into liquidation. *See id.* ¶¶ 12-15, 55-57. Based on these allegations, the Government charged McGraw and Scherr under: (1) 18 U.S.C. § 371 with a conspiracy to commit crimes by or affecting persons engaged in the business of insurance in Count One; (2) 18 U.S.C. § 1349 with a conspiracy to commit wire fraud affecting a financial institution in Count Two; and (3) 18 U.S.C. § 1342 with wire fraud affecting a financial institution in Counts Three to Seven.

Thereafter, McGraw filed the present Motion to Transfer Venue, requesting that the case against him be transferred to his state of residence—New York. *See generally* Mot. to Transfer. The Government opposed this Motion, arguing that the transfer "would result in a de facto severance" as to Scherr and inconvenience the parties and witnesses by requiring them to participate in "[d]uplicative [t]rials." Gov't's Mem. in Opp. to Def.'s Mot. to Transfer ("Opp.") 7. Since then, Scherr entered into a plea agreement with the Government on January 6, 2020, and pleaded guilty to Counts One and Two of the Indictment before the United States Magistrate Judge on January 23, 2020. *See* ECF Nos. 46, 50.

## II.     ANALYSIS

The Federal Rules of Criminal Procedure provide that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." FED. R. CRIM. P. 21(b). "Application of Rule 21(b) is left to the trial court's discretion." *United States v. Bays*, Crim. A. No. 3:13-CV-357-B, 2014 WL 12691742, at *4 (N.D. Tex. Apr. 8, 2014) (citations omitted). In deciding a Rule 21(b) motion, the Court should consider:

> (1) location [or residence] of . . . defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative

2

accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

*Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964) (quoting *Minn. Mining & Mfg. Co. v. Platt*, 314 F.2d 369, 376-77 (7th Cir. 1963) (Hasting, C.J., dissenting)); *see also United States v. Ubak-Offiong*, 364 F. App'x 859, 862-63 (5th Cir. 2010). "The burden is on the defendant to show that transfer would serve the purpose of the rule." *United States v. Patel*, CASE NO. 4:18CR127, 2018 WL 6274034, at *2 (E.D. Tex. Nov. 14, 2018) (citation omitted).

Here, these factors weigh heavily in favor of transfer. The parties agree that McGraw resides in New York and that the Southern District of New York is a more convenient forum for him. *See* Mem. of Law in Supp. of Def.'s Mot. to Transfer ("Mem. in Supp.") 4; Opp. 11. Although witnesses appear to reside in various states, McGraw identified approximately twenty potential witnesses "residing or working in or near the Southern District of New York." Mem. in Supp. 5-9; Opp. 11-13 (explaining that "many of the Government's prospective witnesses reside in . . . Delaware, Minnesota, Illinois, South Carolina, and Florida"). Given the location of McGraw's anticipated witnesses and the fact that his counsel is also located in New York, continued litigation in the Northern District of Texas would result in a far greater expense for McGraw than litigation in New York. *See* Mem. in Supp. 11-14. Moreover, while some pertinent conduct did occur in the Northern District of Texas, the Indictment charges McGraw with operating from the New York offices of Southport, *see* Indictment ¶¶ 5, 18, and many "salient documents and records . . . were confiscated from" the New York office.[1] *See* Mem. in Supp. 10. Thus, the "nerve center" of the "alleged criminal activity" appears to be located in New York. *See Bays*, 2014 WL 12691742, at *6. Accordingly, the Court finds that the location of McGraw's

---

[1] The fact that other electronically-stored data may be located in other states is of little significant to the Court's analysis, because "electronically-stored documents . . . can be easily transferred or made available in any location." *United States v. Patel*, No. 4:18CR127, 2018 WL 6274034, at *3 (E.D. Tex. Nov. 14, 2018) (citations omitted).

3

residence, McGraw's counsel, possible witnesses, pertinent events, and pertinent documents, as well as the comparative expense of litigating in the Northern District of Texas, weigh in favor of transferring this action to the Southern District of New York. *See United States v. Morris*, 176 F. Supp. 2d 668, 673 (N.D. Tex. 2001) (transferring the case "[b]ecause of the location of [the defendant's] residence, the location of the events alleged in the indictment, the location of the witnesses, and the expense to both sides, particularly to the [d]efendant").

The Government's argument to the contrary is rendered moot by Scherr's guilty plea. *See* ECF Nos. 46, 50. The gravamen of the Government's Opposition is that: (1) the transfer would result in "[d]uplicative [t]rials" and "a de facto severance" as to Co-Defendant, Scherr, *see* Opp. 7-11, 16-17; (2) any convenience obtained by transferring the action is outweighed by "the inconvenience that a *second* trial would impose on all other interested parties," *id.* at 11 (emphasis added); (3) "some, if not all, of the[] witnesses at a prospective trial in New York . . . would . . . also be called to testify at Scherr's trial in" Texas, *id.* at 12; and (4) the Government "would have to travel to both Dallas and New York in order to try essentially the same case against both Scherr and McGraw," *id.* at 15. Now that Scherr pleaded guilty, however, a transfer of McGraw's case would not result "in a de facto severance" and "duplicative trials." Rather, only McGraw's case is proceeding to trial. Thus, the interest in avoiding duplicitous litigation does not weigh against transfer in this case. *Compare Bays*, 2014 WL 12691742, at *8 (denying motion to transfer where the transfer would result in multiple trials in different venues). Consequently, the Court finds that McGraw has clearly met his burden of showing that a transfer would serve the purposes set forth in Rule 21(b).

### III. CONCLUSION

For the reasons discussed above, the Court grants McGraw's Motion to Transfer Venue and transfers the above-captioned action to the Southern District of New York.

**SO ORDERED.**

SIGNED January 24, 2020.

_____
**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**